HOLMES, Circuit Judge.
In this criminal appeal, Terry Brian Dobbs brings a sufficiency-of-the-evidence challenge to his conviction for knowingly receiving and attempting to receive child pornography in violation of 18 U.S.C. § 2252(a)(2). Mr. Dobbs contends that there was insufficient evidence to prove: (1) that he knowingly received or attempted to receive either of the two pornographic images submitted to the jury; and (2) that these two particular images traveled in interstate or foreign commerce, as required by our precedent in United States v. Schaefer, 501 F.3d 1197 (10th Cir.2007).
Exercising jurisdiction under 28 U.S.C. § 1291, we agree that the government did not offer sufficient evidence to prove that Mr. Dobbs knowingly received the images found on his hard drive. Consequently, because we have no need to opine on the merits of Mr. Dobbs’s Schaefer argument, we refrain from doing so. We REVERSE *1201 and remand to the district court to VACATE Mr. Dobbs’s conviction and sentence.
I. Background
In April 2006, United States Postal Inspectors in Oklahoma seized Mr. Dobbs’s computer pursuant to a search warrant issued in an unrelated fraud investigation. A search of the computer revealed multiple images suspected to be child pornography, leading the investigators to obtain a second search warrant. The computer’s hard drive was eventually sent to a Department of Justice computer forensic specialist in Washington, D.C. Upon further inspection of Mr. Dobbs’s hard drive, the forensic specialist discovered over 150 images of child pornography in the hard drive’s temporary Internet files folder, or “cache.”[1]
Mr. Dobbs was subsequently indicted for receipt, attempted receipt, and possession of visual depictions of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2) and (a)(4)(B). Prior to trial, the government dismissed the charge of possession in violation of § 2252(a)(4)(B), leaving the single charge that Mr. Dobbs “knowingly received and attempted to receive one or more visual depictions [of minors engaged in sexually explicit conduct], including but not limited to ... ‘14[2].jpg’ [and] ‘b003[l].jpg.’” R., Vol. I, at 109 (Second Superseding Indictment, filed July 11, 2008).
At trial, the government’s case relied principally on the testimony of the forensic specialist, who explained in detail the results of his investigation of Mr. Dobbs’s hard drive. His analysis indicated both that Mr. Dobbs had typed in multiple search terms reflecting the pursuit of child pornography,[2] and that Mr. Dobbs had visited websites consistent with such pornography.[3] Additionally, the forensic specialist reconstructed some of the pages that resulted from Mr. Dobbs’s search activity, noting that after some of the search terms were entered, the user advanced the web browser to get additional results, sometimes up to thirty-six times. He concluded that the computer activity suggested someone who was “methodically seeking out child pornography.” R., Vol. Ill, at 464.
The forensic specialist also testified that the charged photographs recovered from Mr. Dobbs’s hard drive were found exclusively in the computer’s cache. As he explained it, when a person visits a website, the web browser automatically downloads the images of the web page to the computer’s cache. The cache is populated with these images regardless of whether they are displayed on the computer’s monitor. In other words, a user does not necessarily have to see an image for it to be captured by the computer’s automatic-caching function. Although the forensic specialist noted that a computer user can manipulate some images that appear on a *1202 computer’s screen, he acknowledged that there was no evidence that Mr. Dobbs actually viewed the charged images, much less clicked on, enlarged, or otherwise exercised actual control over any of them. Furthermore, while the forensic specialist explained that a user may manipulate and control an image stored in the computer’s cache, he repeatedly admitted that there was no evidence that Mr. Dobbs had accessed his computer’s cache, or that he even knew it existed.
During the trial, the district court initially admitted seventeen images found in Mr. Dobbs’s cache. That number was winnowed down to two when the government failed to provide adequate evidence that fifteen of the images had traveled in interstate commerce. The two remaining images — “b003[l].jpg,” which was captured by the caching function on Mr. Dobbs’s computer on March 15, 2006, at 9:29:56 p.m., and “14[2].jpg,” which was captured shortly thereafter at 9:31:17 p.m. — were banner images, comprised of multiple, smaller images, measuring 3.25 inches by .5 inch.[4]
In constructing its case against Mr. Dobbs, the government created a time line of activity aimed at establishing a pattern indicative of the hunt for child pornography. Specifically, the forensic specialist testified that a pattern existed wherein the arrival of suspect images on Mr. Dobbs’s computer was immediately preceded by searches using terms typically affiliated with child pornography. However, while such a pattern may have existed for the images ultimately excluded from the jury’s consideration, the forensic specialist admitted that there was no evidence of a temporally proximate search indicating the pursuit of child pornography with respect to the two images submitted to the jury. Nor was he able to present evidence that Mr. Dobbs visited a website typically associated with child pornography immediately preceding the arrival of the two images in his computer’s cache.
At the close of the government’s case, and again at the close of all the evidence, Mr. Dobbs moved for a judgment of acquittal, arguing that insufficient evidence was presented to prove both the jurisdictional element under Schaefer and that he “knowingly” possessed the images found on his hard drive. The district court denied Mr. Dobbs’s motions, based in part on its prior ruling limiting the images submitted to the jury. Mr. Dobbs was subsequently found guilty of knowingly receiving and attempting to receive child pornography. The district court sentenced him to 132 months’ imprisonment and nine years of supervised release. This timely appeal followed.
II. Discussion
On appeal, Mr. Dobbs argues that we must reverse his conviction because the government offered insufficient evidence to prove that his receipt of child pornography was “knowing,” and thus punishable under § 2252(a)(2). More specifically, he claims that the lack of evidence suggesting that he knew of his computer’s automatic-caching process forecloses a finding of knowing receipt of the two images submitted to the jury, which were found in the cache. He suggests that “a man who doesn’t know he has certain images inside his computer [cannot] be said to have knowingly accepted those images ... [or] to have knowingly exercised control over them.” Aplt. Reply Br. at 5.
The government, in contrast, contends that Mr. Dobbs’s conviction is supportable *1203 based in part on evidence that he “engaged in a pattern of methodically seeking out child pornography, by conducting image searches for terms ... [associated with child pornography] and downloading websites consistent with child pornography.” Aplee. Br. at 15-16. This, “combined with the ability [of Mr. Dobbs] to control those images, was sufficient to prove that he received child pornography.” Id. at 16. In sum, the government argues that “because Dobbs knowingly sought out and accessed the images, and had the ability to control them when they appeared, the statutory definition of receipt was met.” Id. at 21.
Mr. Dobbs also claims that the government failed to prove the jurisdictional element of the crime, as described in Schaefer — namely, that the particular images presented to the jury crossed state lines. See 501 F.3d at 1202. Because we find Mr. Dobbs’s first argument dispositive, we do not address this second issue.
A. Standard of Review
We review a challenge to the sufficiency of the evidence de novo. United States v. Vigil, 523 F.3d 1258, 1262 (10th Cir.2008). “Evidence is sufficient to support a conviction if, viewing the evidence in the light most favorable to the government, a reasonable jury could have found the defendant guilty beyond a reasonable doubt.” United States v. LaVallee, 439 F.3d 670, 697 (10th Cir.2006) (quoting United States v. Hien Van Tieu, 279 F.3d 917, 921 (10th Cir.2002)) (internal quotation marks omitted). “We will reverse a conviction ‘only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.’” United States v. Willis, 476 F.3d 1121, 1124 (10th Cir.2007) (quoting United States v. Gurule, 461 F.3d 1238, 1243 (10th Cir.2006)).
B. Knowing Receipt
Mr. Dobbs was charged with and convicted of knowing receipt and attempted receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2). That statute provides for the punishment of any person who
knowingly receives ... any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, ... if—
(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
(B) such visual depiction is of such conduct....
18 U.S.C. § 2252(a)(2) (2006).[5]
Although “knowingly receives” is not defined in the statute, “in interpreting the term, we are guided by its ordinary, everyday meaning.” United States v. Tucker, 305 F.3d 1193, 1204 (10th Cir.2002) (analyzing the term “possesses” under a related statute, 18 U.S.C. § 2252(a)(5)(B)). The district court instructed the jury that to “receive” means “to accept an object and to have the ability to control it.” R., Vol. I, at 340 (Jury Instruction No. 16). Neither party has objected to this definition. Consequently, *1204 we are comfortable adopting the view that it comports with the word’s everyday and ordinary meaning (as appears to be the case). See Webster’s Ninth New College Dictionary (1985) (defining “receive” as “to come into possession of’); see also United States v. Stanley, 896 F.2d 450, 451 (10th Cir.1990) (approving of the district court’s definition of “to receive” under § 2252(a)(2) as “to acquire control, in the sense of physical dominion or apparent legal power to dispose of the [item]”).
In addition, the district court instructed the jury that the term “knowingly” means “that an act was done, or visual depictions were received, voluntarily and intentionally, and not because of mistake or accident.” R., Vol. I, at 340. We believe that this definition is consistent with the ordinary and everyday meaning of the word as well, and the parties do not argue to the contrary. See United States v. Fabiano, 169 F.3d 1299, 1303 (10th Cir.1999) (“An act is done ‘knowingly’ if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.”); see also Tenth Circuit Criminal Pattern Jury Instructions No. 1.37 (2005) (“When the word ‘knowingly’ is used in these instructions, it means that the act was done voluntarily and intentionally, and not because of mistake or accident.”).
There is little doubt that Mr. Dobbs — or at least his computer — “received” child pornography. Indeed, Mr. Dobbs does not contest that the government found images of child pornography on his computer. However, mere receipt of child pornography is not what is proscribed by § 2252(a)(2); rather, it is the knowing receipt of this illegal content that is punishable under the statute. See 18 U.S.C. § 2252(a)(2).
Mr. Dobbs challenges the sufficiency of the government’s evidence establishing that he knowingly received the two images that were sent to the jury. A careful review of the record reveals that the government presented no evidence that Mr. Dobbs had accessed the files stored in his computer’s cache, including the two images at issue. And, more tellingly, there was no evidence that he even knew about his computer’s automatic-caching function. Moreover, as to the two images at issue, there was no evidence presented to the jury that Mr. Dobbs even saw them, much less had the ability to exercise control over them by, for example, clicking on them or enlarging them. As such, although there is no question that a rational jury could have found that Mr. Dobbs “received” the two images, we conclude that it could not have found that Mr. Dobbs did so knowingly.
In resisting such a conclusion, the government relies upon “proof that Dobbs knowingly and methodically sought out child pornography,” Aplee. Br. at 19, and posits that the “[fjiles found in Dobbs’s [cache] provided circumstantial evidence that he had received images of child pornography, by downloading the websites on which they appeared,” id. at 16. However, we are not persuaded. The proof that the government relies upon in establishing Mr. Dobbs’s intent to seek out child pornography — viz., the pattern of child-pornography-related searches immediately preceding the creation of illegal images in the cache — does not apply to the two images submitted to the jury. The government’s own forensic specialist admitted that there is no evidence of suggestive searches immediately prior to the creation of those two images in the cache, nor is there any indication that Mr. Dobbs visited suspect websites prior to their arrival in his cache. The pattern of search-and-creation, therefore, is based solely upon evidence related to the fifteen excluded images, and consequently is irrelevant to the question of whether Mr. Dobbs knowingly received the two images that were properly before the jury.
*1205 Furthermore, the government’s suggestion that the presence of the child pornography files in the cache of Mr. Dobbs’s computer provides circumstantial evidence of knowing receipt is misguided. The mere presence of the files in the cache is certainly proof that the files were received through the automatic-caching process; however, for this evidence to be probative of the question of knowing receipt, the government needed to present proof that Mr. Dobbs at least knew of the automatic-caching process. It presented no such proof in this instance.
This proof deficiency is underscored by our decision in United States v. Bass, 411 F.3d 1198 (10th Cir.2005). Bass was rendered in an analogous context — a prosecution for possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B). There, a search of the defendant’s computer had unearthed over 2000 images of child pornography, although “the origin of the images could not be identified — that is, whether the images had been intentionally or automatically saved to the computer from the internet.” Id. at 1200. When interviewed by the authorities, the defendant admitted viewing child pornography, but “stated that he did not know (1) how to download images from the internet or (2) that the computer was automatically saving the images he viewed.” Id. at 1201. Claiming ignorance of his computer’s caching function, the defendant argued that his lack of knowledge as to this automatic process should prevent a finding of knowing possession. Id. at 1201-02.
Despite the defendant’s professed lack of knowledge, we nevertheless affirmed his conviction on appeal. We did so based in large part on evidence that the defendant used software specifically aimed at eliminating the digital residue of his illicit activities, including “History Kill” and “Window Washer.” Id. at 1202.[6] We concluded that in light of his use of these programs, a “jury ... reasonably could have inferred that [the defendant] knew child pornography was automatically saved to his mother’s computer based on evidence that [he] attempted to remove the images.” Id.; see also Tucker, 305 F.3d at 1204 (finding sufficient evidence to support a conviction of knowing possession of child pornography located in the computer’s cache when the defendant admitted that “he knew that when he visited a Web page, the images on the Web page would be sent to his browser cache file and thus saved on his hard drive”).
In contrast to Bass, the government presented absolutely no evidence here from which a reasonable jury could infer that Mr. Dobbs knew of his computer’s automatic-caching function, much less that he had accessed his cache. Consequently, we conclude that the presence of the child pornography files in the cache of Mr. Dobbs’s computer does not alone demonstrate — circumstantially or otherwise — his knowing receipt of those files. For us to conclude otherwise would “turn[ ] abysmal ignorance into knowledge and a less than valetudinarian grasp into dominion and control.” United States v. Kuchinski, 469 F.3d 853, 863 (9th Cir.2006).[7]
*1206 The government vigorously contends that Bass and other cases where at least part of the prosecution related to possession of child pornography are inapposite because this is “a pure receipt case,” where the proof requirements are different. Aplee. Br. at 29. Even assuming arguendo that there are significant differences in the proof requirements of possession and receipt prosecutions,[8] the government’s arguments are unavailing because they do not square with the language of the receipt statute. The government contends that “in a pure receipt case, evidence that the defendant intentionally sought out child pornography establishes that his receipt was knowing.” Id. The government, in effect, is positing that defendants need not know that they actually have received child pornography — through automatic caching or otherwise — to be convicted of knowing receipt of child pornography, so long as they intentionally were seeking it out. This contention is logically untenable and unpersuasive on its face.
*1207 The government also argues that in “a pure receipt case” it need not prove that the defendant “actually exercised control” over the illegal images, but rather “the ability to control the images he received is sufficient.” Id. Even if it were true that in a receipt prosecution the focus is on the ability to control the images (rather than the actual control of them), that ability would need to relate to images that the defendant knew existed; otherwise, the defendant’s conduct with respect to the images could not be deemed to be knowing. Cf. Kuchinski, 469 F.3d at 863 (“Where a defendant lacks knowledge about the cache files, and concomitantly lacks access to and control over those files, it is not proper to charge him with possession and control of the child pornography images located in those files, without some other indication of dominion and control over the images.” (emphasis added)). In other words, defendants cannot be convicted for having the ability to control something that they do not even know exists.
Generally, in regard to the cached images, the government failed to present any proof that Mr. Dobbs knew that the images were automatically being downloaded to his computer’s cache — viz., that he even knew that the images were there. Therefore, the government perforce faded to prove that Mr. Dobbs had the ability to control those images. As for any child pornography that may have appeared on Mr. Dobbs’s computer monitor, the government’s argument likewise breaks down when we specifically focus on the two images at issue.
The government presented no evidence that Mr. Dobbs actually saw the two images on his monitor, such that he would have had the ability to exercise control over them. As noted, the pattern of child-pornography-related searches immediately preceding the creation of illegal images in the cache does not apply to the two images submitted to the jury. In particular, the government’s forensic specialist acknowledged that there was no evidence of suggestive searches immediately prior to the creation of those two images in the cache. Nor, according to the specialist, was there evidence of Mr. Dobbs visiting child pornography websites prior to the arrival of the two images in his cache. In sum, the lack of a search-and-creation pattern as it relates to the two images before the jury, when combined with the absence of any evidence establishing that Mr. Dobbs ever saw the images, forfends any view that knowing receipt could have been found by a rational jury. In other words, the government needed to present sufficient evidence in the first instance that Mr. Dobbs knew that the two images were present on his monitor before it could convict him of knowingly receiving them under its theory that receipt could be established in “a pure receipt case,” Aplee. Br. at 29, by Mr. Dobbs’s ability to control the images as they appeared on his monitor. It presented no such evidence here.
The government also highlights that Mr. Dobbs was charged with attempted receipt. Therefore, it reasons that we should not conclude that “the lack of direct evidence that Dobbs viewed the two images” is “fatal to his conviction,” because there was “substantial evidence establishing Dobbs’s intent to receive child pornography, and that he acted to commit that offense” to permit us to “affirm his conviction on the attempt charge.” Aplee. Br. at 32. In particular, as to the “substantial step” requirement of an attempt offense, the government contends that “the combination of those [Internet] searches [involving keywords suggesting child pornography] with Dobbs’s subsequent visits to websites consistent with child pornography was precisely the type of act that would ordinarily result in the receipt of child pornography.” Id. at 34.
*1208 However, when we pause to consider the nature of the completed offense that would necessarily need to be the object of any attempt conviction here, it is patent that the government’s argument is unavailing. An attempt offense does not exist in a vacuum; it must relate to the completion of the charged offense. See, e.g., United States v. Coenelio-Pena, 435 F.3d 1279, 1286 (10th Cir.2006) (“A defendant is guilty of attempt if he intends to commit a crime and takes a substantial step toward the commission of that crime.” (emphasis added)); United States v. Taylor, 413 F.3d 1146, 1155 (10th Cir.2005) (“In our circuit, a conspiracy or an attempt to commit a crime requires the intent to commit the crime and overt acts in furtherance of that intent.” (emphasis added)); see also Ira P. Robbins, Double Inchoate Crimes, 26 Harv. J. on Legis. 1, 70 (1989) (“Crimes in the nature of attempt, however, are not merely abstract attempts. Rather, they are substantive offenses combining elements of a completed offense with the attempt to commit that specific offense.” (emphasis added)).
Here, the only aspects of the charged offense that went to the jury involved two images — “b003[l].jpg,” which was captured by the caching function on Mr. Dobbs’s computer on March 15, 2006, at 9:29:56 p.m., and “14[2].jpg,” which was captured shortly thereafter at 9:31:17 p.m. Thus, the government’s evidence needed to be sufficient to establish the attempt offense with respect to those two images. Indeed, in oral argument, the government’s counsel candidly acknowledged that, were the court to stray in its attempt analysis from a focus on the two images to the other images that the district court did not permit the jury to consider, it would “create problems.” Oral Argument at 21:09.
In order to be guilty of attempt, a defendant must be shown to have intended to carry out the proscribed conduct — viz., knowing receipt of child pornography. See, e.g., Cornelio-Pena, 435 F.3d at 1286 (stating that “to be guilty of attempt a defendant must intend to commit the crime”); United States v. Evans, 358 F.3d 1311, 1312 (11th Cir.2004) (“A conviction for attempt require[s] proof ... that [the defendant] possessed the mens rea required for the underlying crime.... ”).
Significantly, an essential element of an attempt offense is a “substantial step.” See, e.g., United States v. Munro, 394 F.3d 865, 869 (10th Cir.2005) (“To prove attempt, the government had to show that Munro took a ‘substantial step’ towards the commission of the ultimate crime, and that such step was more than mere preparation.”). Thus, the government’s evidence had to be sufficient to prove that Mr. Dobbs took a substantial step toward the knowing receipt of the two images at issue. See United States v. DeSantiago-Flores, 107 F.3d 1472, 1479 (10th Cir.1997) (“A substantial step is an ‘appreciable fragment’ of a crime and an action of ‘such substantiality that, unless frustrated, the crime would have occurred.’ ” (quoting United States v. Buffington, 815 F.2d 1292, 1303 (9th Cir.1987))), overruled on other grounds by United States v. Holland, 116 F.3d 1353, 1359 n. 4 (10th Cir.1997) (en banc footnote); United States v. Savaiano, 843 F.2d 1280, 1296 (10th Cir.1988) (“We concluded that ‘[t]here must be an overt act pointed directly to the commission of the crime charged.’ ” (alteration in original) (quoting United States v. Monholland, 607 F.2d 1311, 1320 (10th Cir.1979))).
In some instances, “[d]efining conduct which constitutes a ‘substantial step’ toward commission of the crime has proved to be a thorny task.” Savaiano, 843 F.2d at 1296. However, on this record, it is not. As it pertains to the two images at issue, the government’s evidence *1209 of a substantial step is clearly insufficient. As noted, the pattern of child-pornography-related searches immediately preceding the creation of the illegal images in the cache of Mr. Dobbs’s computer does not apply to the two images submitted to the jury. Moreover, the government’s forensic specialist acknowledged that there is no evidence of suggestive searches immediately prior to the creation of those two images. And, there is no indication that Mr. Dobbs visited suspect websites before the images arrived in his computer’s cache. Therefore, consistent with Mr. Dobbs’s argument, we would be hard-pressed to conclude that Mr. Dobbs took a substantial step toward the knowing receipt of these two images, even if receipt could be accomplished through viewing the child pornography images on his monitor, with the present ability to control them. See Aplt. Reply Br. at 20-21 (“Yet [the government’s] laundry list of facts returns to the evidence supporting the 15 images never submitted to the jury, namely, the searches he conducted to find them and the Web sites he visited to obtain them. None of these facts constitute a substantial step toward acquiring and controlling (that is, receiving) the two relevant images.” (citation omitted)). Therefore, the government’s attempt argument must fail.
III. Conclusion
For the reasons discussed above, we conclude that the government provided insufficient proof to establish the knowledge required for conviction under 18 U.S.C. § 2252(a)(2). Accordingly, we REVERSE the district court’s judgment and remand with instructions to VACATE the conviction and sentence.

. The record refers to this folder interchangeably as “temporary internet files folder” and "cache.” For consistency and clarity, we refer to it as the cache.

. For computers running Microsoft Windows, the Windows registry stores information about the search terms that a user types into Internet search engines. The Windows registry revealed that some of the search terms on Mr. Dobbs's computer included the following: "very young sex,” "erotic preteen," "youngest porn,” "pedo pics,” and "preteen Lolita.” R., Vol. III, at 452-56 (Trial Tr„ dated Oct. 29, 2008).

. Like the Windows Registry and search terms, a computer's "index.dat” file records the websites visited by the computer user. The forensic specialist was able to match up websites listed in the "index.dat” file of Mr. Dobbs's computer with several websites that were consistent with child pornography. See R., Vol. III, at 376-77.

. Officers from the Palm Beach County Sheriff's Office and the Suffolk County Police Department testified that these two banners contained images that were created in Florida and New York.

. Section 2252 has undergone significant amendment since Mr. Dobbs was charged, including a revision that criminalizes knowingly accessing sexually explicit images with the intent to view them. See Effective Child Pornography Prosecution Act of 2007, Pub.L. No. 110-358, 122 Stat. 4001, 4002-4003. In this appeal, however, we review the sufficiency of the evidence for Mr. Dobbs’s conviction under the law as it existed at the time of the charged offense, not as it stands today.

. The defendant admitted that he used "History Kill” and "Window Washer" to delete child pornography because "he didn’t want his mother to see those images.” Bass, 411 F.3d at 1202.

. The Ninth Circuit’s decision in Kuchinski also underscores the proof deficiency here. In Kuchinski, the court was called on to determine whether images found in the defendant’s cache could be used to enhance his sentence for knowingly receiving and possessing child pornography in violation of 18 U.S.C. § 2252A(a)(2) and (a)(5)(B). Although 110 images of child pornography had been found in the defendant’s download folders and deleted files folder (recycle bin), more than 1100 illegal images were found in his *1206 active cache, and another 13,904 to 17,784 related files were located amongst the deleted temporary Internet files. Id. at 856. The district court applied the five-level enhancement that is triggered when over 600 qualifying images are recovered, relying on the additional images found in the computer's cache. Id. at 862.
The defendant appealed, claiming that there was insufficient evidence to establish that he knowingly possessed the cached files. The Ninth Circuit, in reviewing the record, agreed that "there was no evidence that Kuchinski was [a] sophisticated [computer user], that he tried to get access to the cache files, or that he even knew of the existence of the cache files.” Id. at 862. Relying on its earlier decision in United States v. Romm, 455 F.3d 990 (9th Cir.2006), which in turn rested heavily on our decision in Tucker, the court concluded that “[w]here a defendant lacks knowledge about the cache files, and concomitantly lacks access to and control over those files, it is not proper to charge him with possession and control of the child pornography images located in those files, without some other indication of dominion and control over the images.” Kuchinski, 469 F.3d at 863; see also Romm, 455 F.3d at 1000 ("[T]o possess the images in the cache, the defendant must, at a minimum, know that the unlawful images are stored on a disk or other tangible material in his possession.”). Like Kuchinski, there is no evidence in this case that Mr. Dobbs knew of his computer’s automatic-caching function or of the files that were created as a result of it.

. Although we need not (and do not) definitively opine on the matter, even assuming that different proof standards attend prosecutions for possession and receipt of child pornography, the government’s contention that the standards for the former (i.e., possession) are more stringent than for the latter (i.e., receipt) is open to serious question. Some courts have taken the view that knowing possession — even if fleeting — is an essential predicate for knowing receipt. See United States v. Davenport, 519 F.3d 940, 943 (9th Cir.2008) (“It is impossible to 'receive' something without, at least at the very instant of 'receipt,' also 'possessing' it.”); United States v. Miller, 527 F.3d 54, 71 (3d Cir.2008) ("[I]t is clear that, as a general matter, possession of a contraband item is a lesser-included offense of receipt of the item.”); Romm, 455 F.3d at 1001 ("Generally, federal statutes criminalizing the receipt of contraband require a 'knowing acceptance or taking of possession’ of the prohibited item.”); United States v. Kamen, 491 F.Supp.2d 142, 150 (D.Mass.2007) ("Receipt equals possession plus the additional element of acceptance, rendering possession a lesser included offense of receipt....”); cf. also United States v. Morgan, 435 F.3d 660, 662-63 (6th Cir.2006) (stating in dicta that a defendant who was initially charged with receiving child pornography under 18 U.S.C. § 2252A(a)(2) ultimately "entered an oral conditional plea of guilty to possessing images depicting minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252A(a)(5)(B), a lesser-included offense of the charged violation”). However, we need not definitively resolve that issue here. Even if we assume arguendo that significant distinctions exist between the proof requirements for child pornography possession and receipt offenses, we conclude that the government's arguments are unavailing.