LAMBERT, JUDGE:
Cameron Mason Steele has appealed from the portion of the Jefferson Circuit Court's judgment convicting him of possession of materials portraying a minor in a sexual performance, for which he received a five-year sentence and requires him to register as a sex offender for twenty years. After considering the parties' briefs, oral arguments, and Steele's attorney's response to the Court's inquiry at oral argument, we find no abuse of discretion in the circuit court's rulings. Hence, we affirm.
In May 2013, the Jefferson County grand jury indicted Steele on three charges; namely, possession of a matter portraying a sexual performance by a minor pursuant to Kentucky Revised Statutes (KRS) 531.335, tampering with physical evidence pursuant to KRS 524.100, and voyeurism pursuant to KRS 531.090. The indictment charged that on December 30, 2012, Steele knowingly had in his possession or control matter that visually depicted an actual sexual performance by a minor and had knowledge of the content of this matter. The voyeurism charge was described to have taken place between late December 2011 and late December 2012. The Uniform Citation completed upon Steele's arrest on March 7, 2013, states:
On 12/30/12 the above subject was confronted by his wife after she found naked pictures of her daughter on his iPad. Above subject admitted to hiding a web cam in her daughter's bedroom. The above subject then started to delete the pictures off the iPad and he destroyed the web cam. During the course of the investigation detective located child pornography that above subject was in possession of. Child pornography was several pictures that were on 3½" floppy discs.
Steele retained counsel and entered a not guilty plea.
A trial by jury commenced on May 27, 2014. The Commonwealth presented testimony from Steele's wife and her adult children (Steele's stepchildren).[1] The testimony *390 established that the wife opened Steele's iPad with his password looking for a photo, and in the process, she found nude photos of her daughter and of her daughter engaging in sexual acts with her boyfriend. The wife confronted Steele, who admitted to her that he had placed a webcam in the vent in the room the daughter used when she stayed at their apartment. The photos from the webcam uploaded directly to Steele's computer. Steele saved screen shots from the webcam and loaded them onto his iPad. In an effort to save his marriage, Steele claimed he destroyed the webcam and placed it in a bag of used kitty litter. He also deleted photos from his electronic devices. The wife called her son and daughter, who came to the apartment, and she told them what she had found. The wife made Steele leave the apartment, and the police were called.
Officer Nathan Vrab, a patrol officer with the Louisville Metro Police Department (LMPD), responded to the call. He talked to the parties and performed a five- or ten-minute search of the basement, where Steele's computer equipment and many of his possessions were located. This room was considered his "man cave." Officer Vrab collected items around Steele's desk that he thought would be important, including a computer and some flash or zip drives. He also collected the iPad from Steele. Steele was not arrested at that time, and no child pornography was found on any of the items Officer Vrab took from the residence. Detective Chris Horn with LMPD was assigned to investigate the case.
In the days and weeks that followed, the wife began cleaning up the cluttered basement where many of Steele's possessions remained. During one of her cleaning sessions, the wife found a purple box that had fallen behind a desk. This box contained several floppy disks. She informed her son, and they used a device belonging to her mother to determine what was on the disks. Based on the file names, they turned the disks over to Detective Horn, who determined that seven disks held child pornography and four held photos of nude adult celebrities. Detective Horn had also determined that the iPad contained photos of nude celebrities, non-celebrity nude photos, clothed women, and nature. Detective Horn never visited the apartment, and he took the wife at her word as to where the floppy disks were found. Steele did not present any witnesses, but the Commonwealth played his recorded police statement without objection, in which he characterized the voyeurism as a mistake and denied possessing any child pornography.
At the conclusion of the testimony, Steele moved for directed verdicts on the tampering and possession charges, which were both denied. He admitted to the voyeurism charge throughout the trial. The jury returned guilty verdicts on the possession and voyeurism charges, but it returned a not guilty verdict on the tampering charge. The jury fixed his sentence at five years on the possession conviction and at twelve months and a $500.00 fine for the voyeurism conviction. The court entered an order setting forth the jury's verdict and recommended sentence on June 3, 2014, and scheduled a sentencing hearing for the following month.
In early June 2014, Steele filed a motion pursuant to Kentucky Rules of Criminal Procedure (RCr) 10.06 and 10.24 for the court to set aside the jury verdict or direct a verdict of acquittal on the possession conviction. He argued that the Commonwealth failed to meet its burden of proving that he had knowledge of the subject matter or had actual possession of the child pornography. Steel also argued that the *391 verdict was based upon passion and prejudice due to his voyeurism conviction rather than on the evidence. Steele filed another motion a few days later for a judgment notwithstanding the verdict or for a new trial pursuant to RCr 10.02 and 10.24. The basis for this motion was again the court's denial of his motion for a directed verdict of acquittal on the possession charge due to lack of evidence of his actual and knowing possession of the material.
In addition, Steele moved the circuit judge to recuse, stating in his affidavit that he had not received a fair trial because the judge ruled in the Commonwealth's favor on almost every motion, denied his motion for a judgment notwithstanding the verdict despite the introduction of improper evidence, found that he was a danger to the community and a flight risk at the post-conviction bond hearing even though he had never missed a court date and was only convicted of a Class D felony, and caused his release on bond to be delayed. Steele also questioned her qualifications for her position as a judge. Steele did not believe he would receive a fair sentence and filed a complaint with the Judicial Conduct Commission. The circuit court denied the motion to recuse, stating the court did not have any personal bias or prejudice against the parties and noting that the affidavit contained factual inaccuracies as to the judge's qualifications. Likewise, the Chief Justice denied Steele's motion to disqualify the trial judge.
The circuit court entered a judgment of conviction and sentence on September 11, 2014, sentencing Steele in accordance with the jury's recommendation to concurrent sentences totaling five years. In the ruling, the court stated that Steele was ineligible for probation or a conditional discharge as a matter of law.
On September 17, 2014, Steele moved the court pursuant to RCr 11.42 and Kentucky Rules of Civil Procedure (CR) 60.02 to alter, amend, or vacate the portion of the final judgment stating that he was ineligible for probation or conditional discharge, asserting that he was eligible for probation based upon the presentence investigation report. He also objected to the portions of the judgment stating that he had agreed to the five-year sentence for the possession conviction and that he was required to undergo sex offender treatment while in custody. In its response, the Commonwealth did not object to Steele's request to modify the portion of the judgment related to whether he was eligible for probation and that he had agreed to the five-year sentence. However, the Commonwealth argued that the circuit court had the discretion to order sex offender treatment because Steele was convicted of a sex crime and was considered a sexual offender.
On August 10, 2016, the court entered an order granting Steele's motion, in part. The same day, the court entered an amended final judgment changing the language regarding Steele's eligibility for probation and his agreement to the five-year sentence but retaining the order that he undergo sex offender treatment in custody. This belated appeal now follows.
On appeal, Steele raises two issues related to his conviction for possession of matter portraying a sexual performance by a minor; namely, that the circuit court erred when it 1) denied his motion for a directed verdict based on lack of knowledge or possession, and 2) permitted the Commonwealth to introduce photos of young girls on his computer. The Commonwealth, in its responsive brief, asserts that there is no merit to either argument.
We shall first consider whether the circuit court should have granted Steele's motion for a directed verdict on *392 the possession charge and dismissed that charge against him.
On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.
On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.
Perdue v. Commonwealth , 411 S.W.3d 786, 790 (Ky. App. 2013) (quoting Commonwealth v. Benham , 816 S.W.2d 186, 187 (Ky. 1991) ). "To defeat a directed verdict motion, the Commonwealth must only produce 'more than a mere scintilla of evidence.' " Lackey v. Commonwealth , 468 S.W.3d 348, 352 (Ky. 2015) (quoting Benham , 816 S.W.2d at 187 ).
KRS 531.335 sets for the elements of the felony of possession or viewing of matter portraying a sexual performance by a minor. As pertains to this case, subsection (1)(a) provides:
A person is guilty of possession ... of matter portraying a sexual performance by a minor when, having knowledge of its content, character, and that the sexual performance is by a minor, he or she:
(a) Knowingly has in his or her possession or control any matter which visually depicts an actual sexual performance by a minor person[.]
In Crabtree v. Commonwealth , 455 S.W.3d 390, 396 (Ky. 2014), the Supreme Court of Kentucky set forth the elements of this crime as follows:
[T]he essential elements are (1) knowingly having possession or control (2) of a visual depiction (3) of an actual sexual performance by a minor, and (4) having knowledge of its contents. The statute contains two separate mental states: the defendant must know the content of the images and videos (i.e., that they depict a sexual performance by a minor) and the defendant must knowingly possess the images or videos.
Steele contends that the Commonwealth failed to establish knowing or actual possession of the photos on the floppy disks portraying such actions.
During the trial, Steele argued that he was entitled to a directed verdict on this charge because there had been no testimony that he had possession of the floppy disks, which had been found in the basement where his belongings were, but he had not been in the residence for 46 days. Detective Horn had not been in the house and had relied upon the wife's statement as to where she found the floppy disks. No child pornography had been found on his computer or hard drive, and Steele did not have the technology to access the files on the floppy disks. He argued that the nude photos of celebrities found on separate floppy disks were not enough to tie the ones including child pornography to him. The Commonwealth, in response, argued that reasonable inferences could be drawn between the adult nude photos and the child pornography, which was enough to defeat the motion for a directed verdict under the standard.
The court ultimately denied Steele's motion, carefully considering the evidence presented at trial and the language of *393 KRS 531.335(1). The court recognized that the statute only required dominion or control in stating that Steele did not need the technical equipment to open the floppy disks on a computer. The witness testimony established that Steele kept many of his possessions in the basement and that there was similar material in the form of nude celebrity photos on his other electronic devices. The court determined that there was circumstantial evidence of more than mere ownership, and in a light most favorable to the Commonwealth, the jury would have to weigh the evidence to decide whether to believe the testimony elicited by the Commonwealth from the family members.
Steele makes a similar argument in his brief as he did below and relies upon Crabtree , supra , a case in which the defendant had been found guilty of 65 counts of the same charge as Steele for photographs that had been on his computer. In Crabtree , the Court considered both video and still images.
The Supreme Court extensively discussed the knowing possession requirement of KRS 531.335. The Court recognized that, "[t]he crime requires only the knowing possessing of child pornography, regardless of the purpose. The mens rea requirements of [ KRS 531.335 ] are satisfied by showing that the defendant knew the videos were child pornography and that he knowingly possessed them." Crabtree , 455 S.W.3d at 402.
[D]irect proof of knowledge is not necessary. "[P]roof of actual knowledge can be by circumstantial evidence." Love v. Commonwealth , 55 S.W.3d 816, 825 (Ky. 2001). Thus, " 'proof of circumstances that would cause a reasonable person to believe or know of the existence of a fact is evidence upon which a jury might base a finding of full knowledge of the existence of that fact.' " Id. (quoting Lawson & Fortune, [Kentucky Criminal Law ], § 2-2(c)(l), at 45 [ (1998] ) ). The circumstantial evidence of Crabtree's knowledge of the content of the files included his own statement that he had watched a child-pornography video from among his downloads. This buttressed the fact that the file names were reliable indicators of the content of the other videos that he downloaded in part.
The direct evidence of the filenames of the videos, along with the circumstantial proof that he admitted viewing one child pornography video, even if it was not one of the charged videos, taken together, were evidence from which a jury could infer that Crabtree knowingly partially downloaded files that contained child pornography. As to this point, there was sufficient evidence to submit the case to the jury.
Crabtree , 455 S.W.3d at 399-400 (footnotes omitted).
As to the still photographs, the Court reached a different conclusion because "the still images were not found in an ordinary, user-accessible folder on the computer; they were instead found in the operating system's thumbcache." Id. at 403.
To the extent that the charges were based on Crabtree's possessing the thumbcache images themselves, the proof necessarily fails. There was no evidence that Crabtree knew of the existence of the thumbcache or could access the thumbcache. The images in the thumbcache were there because of an automatic function of the computer itself. Crabtree did not place the images in the thumbcache.
Like the automatically generated cache images in United States v. Dobbs , 629 F.3d 1199 (10th Cir. 2011), the thumbcache images are evidence of possession of child pornography, but they *394 are not evidence of knowing possession without additional proof that Crabtree "at least knew of the automatic-caching process." Id. at 1204. This differs significantly from the video files, which required affirmative steps including reading the incriminating filenames to download the video, and for which proof of the incriminating filenames was available.
Crabtree , 455 S.W.3d at 404.
Having considered the circumstances of this case, we must agree with the Commonwealth that there was sufficient evidence of Steele's knowing possession of the floppy disks containing child pornography to permit the matter to proceed to the jury. The file names introduced by the Commonwealth, which we have reviewed and shall not repeat here, clearly establish the subject of the photographs on several of the floppy disks as being child pornography. This supports a conclusion that Steele knew what the floppy disks contained. Similarly, there was sufficient circumstantial evidence to support that Steele possessed the floppy disks based upon the location where the wife found them in the portion of the cluttered basement where Steele kept many of his possessions, including his computer equipment. Testimony also established that Steele was the only person who went to the basement. Therefore, we find no abuse of discretion in the circuit court's denial of Steele's motion for a directed verdict on this charge and for permitting the matter to proceed to the jury.
Next, Steele asserts that the circuit court erred in permitting the Commonwealth to introduce photos of "scantily clothed young girls from Steele's computer" over his objection at trial. Steele notes in his brief that this issue was preserved via his objection during a bench conference between 10:32 and 10:38:57 on May 27, 2014. During this time period, the parties made arguments related to the introduction of evidence of adult pornography contained on the floppy disks. The discussion as to whether to introduce the photographs of child pornography found on the floppy disks took place just before that time, and Steele sought to exclude this evidence from viewing by the jury through his stipulation that the photographs constituted child pornography. The circuit court denied this request because the Commonwealth needed to present this particular evidence to the jury to establish an element of its case. Steele never argued that the circuit court should exclude evidence of "scantily clothed young girls from Steele's computer" during the time of the trial referenced in his brief. The Commonwealth argues that the circuit court did not abuse its discretion in permitting it to introduce evidence of adult pornographic material from the floppy disks, and we agree.
In Commonwealth v. Bell , 400 S.W.3d 278, 283 (Ky. 2013), the Supreme Court of Kentucky confirmed that an appellate court must review a trial court's decision to admit or exclude evidence for abuse of discretion:
Trial courts must apply the rules of evidence to control the trial and to avoid the injection of collateral and overly prejudicial matters. To this end, the trial courts are given the power to determine the admissibility of all evidence and are given substantial leeway-sound discretion-in making those determinations. For this reason, an appellate court will review a trial court's evidentiary rulings for an abuse of discretion, and will determine that a trial court acted within that discretion absent a showing that its decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal *395 principles." Commonwealth v. English , 993 S.W.2d 941, 945 (Ky. 1999).
The applicable rules regarding the introduction of evidence are set forth in the Kentucky Rules of Evidence (KRE). KRE 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Generally, "[a]ll relevant evidence is admissible," unless otherwise provided, and "[e]vidence which is not relevant is not admissible." KRE 402. KRE 403, however, provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."
We have reviewed the circuit court's ruling related to the introduction of evidence of adult pornography from the floppy disks, and we find no abuse of discretion in the ruling. While the adult material contained on four of the eleven disks was not illegal, we agree with the Commonwealth that this evidence was both probative and relevant in that it linked the floppy disks to the material on Steele's iPad, which he admitted to possessing. The iPad included the same type of nude celebrity photographs that were included on four of the floppy disks. The similar types of photographs on both the floppy disks and the iPad established evidence of Steele's possession and ownership of the seven floppy disks that contained child pornography. Therefore, we hold that the circuit court properly permitted the introduction of the adult pornographic material found on the floppy disks pursuant to KRE 401 as this evidence was both relevant and not so prejudicial that its probative value was outweighed by the danger of undue prejudice.
For the foregoing reasons, we affirm the Jefferson Circuit Court's judgment of conviction.
ALL CONCUR.

We shall not use the wife's, daughter's, or son's respective names to protect their identities.