FILED
United States Court of Appeals
Tenth Circuit

April 9, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ELI TRAUFIELD,

    Defendant - Appellant.

No. 18-1061
(D.C. No. 1:16-CR-00078-RBJ-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **BALDOCK**, and **KELLY**, Circuit Judges.
_____

Eli Traufield appeals his sentence of 108 months in prison and ten years of

supervised release for possession of child pornography in violation of 18 U.S.C.

§ 2252A(a)(5)(B). Traufield disputes the procedural and substantive reasonableness

of his sentence and challenges several conditions of his supervised release. His

attorney has moved to withdraw and filed a brief pursuant to *Anders v. California*,

386 U.S. 738 (1967), stating there are no non-frivolous grounds to appeal. We agree,

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

and therefore, exercising jurisdiction under 28 U.S.C. § 1291, we grant counsel's motion to withdraw and dismiss this appeal.

I

A federal grand jury indicted Traufield on two counts of distributing child pornography, 18 U.S.C. § 2252A(a)(2) and (b)(1), and one count of possession of child pornography, *id.* § 2252A(a)(5)(B) and (b)(2). Traufield pleaded guilty to count three in exchange for the government's dismissal of counts one and two.[1,2] The initial presentence investigation report (PSR) determined Traufield possessed 1,638 images and 43 videos of child pornography on his computer, yielding a sentencing range of 108 to 135 months in prison, with a 120-month statutory maximum sentence. Traufield objected, arguing, among other things, that images recovered from his computer's "unallocated space" and/or "shadow copies" should not be attributed to him as relevant conduct for sentencing purposes. R., Vol. 1 at 79-82. He also argued in a sentencing memo that the sentencing factors at 18 U.S.C. § 3553(a) warranted a below-Guidelines sentence of no more than 60 months in prison. The government disagreed, arguing that the sentencing factors warranted the

---

[1] Some of Traufield's arguments challenge his conviction, but those arguments are foreclosed by his guilty plea. *See United States v. De Vaughn*, 694 F.3d 1141, 1151 (10th Cir. 2012) ("'A guilty plea is more than a confession which admits that the accused did various acts. It is an admission that he committed the crime charged against him.'" (quoting *United States v. Broce*, 488 U.S. 563, 570 (1989)).

[2] As part of his plea agreement, Traufield executed an appeal waiver, which the government previously moved to enforce. We denied the government's motion without prejudice, but the government has not renewed its motion; instead it agrees with counsel's assessment that there are no non-frivolous issues for appeal.

2

statutory maximum sentence of 120 months in prison. A revised PSR rejected Traufield's objections relating to his sentencing calculation, maintained that the applicable sentencing range was 108 to 120 months in prison, and recommended a sentence of 108 months followed by ten years of supervised release.

At sentencing, the district court heard expert testimony from FBI forensic examiner James Stevens. Stevens explained that a file deleted from a computer will result in "unallocated" space and can be restored with forensic software. R., Vol. 4 at 61, 101, 133. He distinguished this type of restored file from "shadow copies," which are back-up files automatically created by Windows operating systems at specific points in time via a virtual shadow service (VSS). *See id.* at 62-65, 91, 134-35. He explained that these shadow copies enable a user to go back and view the computer as it existed at certain dates and times simply by navigating through Windows Explorer on the desktop if, for example, a user wants to retrieve an accidentally deleted file.

Stevens testified that using VSS, he was able to restore a file-sharing program used by Traufield called GigaTribe. *Id.* at 91. He stated that once he restored the program, he was able to access it as it appeared on certain dates. *See id.* at 92-93. He selected July 29, 2013, which restored three GigaTribe subfolders containing 715 images and 18 videos[3] of child pornography. *Id.* at 93-94, 99-100. Stevens emphasized that this material was retrieved using VSS, it was not restored from the

---

[3] Stevens later testified that he restored 25 videos depicting child pornography. *See* R., Vol. 4 at 154-55.

computer's unallocated space, and it "could be accessed on [Traufield's] computer on that date by simply going down to . . . Windows Explorer, navigating down to the folder, clicking, and the files would be listed, and you could open those files from that location." *Id.* at 154. Although Stevens could not confirm whether Traufield actually viewed each file, *id.* at 158-59, he could tell through VSS that sometime between July 29 and July 31, 2013, the material was deleted, and then, after July 31, the material was emptied from the computer's recycling bin, because he was able to restore it from the computer's unallocated space, *id.* at 100-01, 159-60.

Additionally, Stevens testified that he recovered some 100 pages of chat logs, which the district court admitted, between Traufield and other GigaTribe users. *See id.* at 79, 82-83. He recounted one in which Traufield identified himself by the screenname "nocosportsfan" to another user. *Id.* at 84-85. Traufield wrote, "Hello, how's it going? I'm new, just getting started. Want to trade?" *Id.* at 85. The other user wrote back: "Sure," and gave Traufield his password. *Id.* One minute later, Traufield replied, "So hot, wow, you popped my cherry[.]" *Id.* Traufield indicated he would give the other user access to his files, and he later gave him the password. The other user replied, "Mmmh, good stuff." *Id.* at 88. Traufield then wrote that he was looking for a video depicting Colombian girls, whom he described as "super hot, best body on the net." *Id.* The other user responded, "Try to get it, when I see–when I see, tell you." *Id.*

Stevens also testified that he personally viewed the material he recovered from Traufield's computer and confirmed that it depicted prepubescent children under the

4

age of 12 engaging in child pornography. He stated, "There's no question that there [were] children of a very young age. There's photos of babies, . . . with diapers or onesies. And the onesies are unsnapped. The diapers are open. There's definitely pictures of small kids." *Id.* at 156.

The district court heard the parties' arguments, overruled Traufield's objections, considered the § 3553(a) factors, and sentenced Traufield to 108 months in prison. The court also imposed a term of ten years of supervised release, subject to various special conditions. After Traufield appealed, his attorney moved to withdraw and filed an *Anders* brief, asserting there are no non-frivolous issues for appeal. As we have explained, *Anders*

> authorizes counsel to request permission to withdraw where counsel conscientiously examines a case and determines that any appeal would be wholly frivolous. Under *Anders*, counsel must submit a brief to the client and the appellate court indicating any potential appealable issues based on the record. The client may then choose to submit arguments to the court. The Court must then conduct a full examination of the record to determine whether defendant's claims are wholly frivolous. If the court concludes after such examination that the appeal is frivolous, it may grant counsel's motion to withdraw and may dismiss the appeal.

*United States v. Kurtz*, 819 F.3d 1230, 1233 (10th Cir. 2016) (internal quotation marks omitted). Counsel identified four potential appellate issues relating to sentence enhancements applied by the district court, although in counsel's judgment, these are frivolous issues. The government agrees. For his part, Traufield filed a lengthy pro se response, reiterating some of the same arguments, challenging the substantive reasonableness of his sentence, and contesting several conditions of his supervised release.

5

## II

"We review a sentence for reasonableness under an abuse-of-discretion standard." *United States v. Lente*, 759 F.3d 1149, 1155 (10th Cir. 2014) (internal quotation marks omitted). "A sentence is procedurally unreasonable if the district court incorrectly calculates or fails to calculate the Guidelines sentence, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, relies on clearly erroneous facts, or inadequately explains the sentence." *Id.* at 1156 (internal quotation marks omitted). A sentence may be substantively unreasonable if the district court places undue weight on certain § 3553(a) factors or fails to adequately justify its sentence in light of the § 3553(a) factors. *See id.* But "[a] sentence is substantively reasonable when it reflects the gravity of the crime and the § 3553(a) factors as applied to the case." *United States v. Geiner*, 498 F.3d 1104, 1107 (10th Cir. 2007) (internal quotation marks omitted). "[W]e accord a properly calculated Guidelines sentence a presumption of substantive reasonableness." *Id.*

### A. Procedural Reasonableness

We begin with the four issues identified by counsel relating to the calculation of Traufield's sentencing range. In evaluating these issues, we review the district court's legal interpretation of the Guidelines de novo and its factual findings for clear error. *See United States v. Dalton*, 409 F.3d 1247, 1251 (10th Cir. 2005). The revised PSR determined the applicable base offense level was eighteen. *See* U.S. Sentencing Guidelines Manual (USSG) § 2G2.2(a)(1) (U.S. Sentencing Comm'n

6

2016).[4]  It added a two-level enhancement under USSG § 2G2.2(b)(2) because material possessed by Traufield involved prepubescent minors who had not attained the age of twelve; a five-level enhancement under § 2G2.2(b)(3)(B) because he distributed child pornography in exchange for a thing of value, although not for pecuniary gain; another five-level enhancement under § 2G2.2(b)(7)(D) because he possessed more than 600 images; and a two-level enhancement under § 2G2.2(b)(6) because his offense involved use of a computer.  After subtracting three levels for acceptance of responsibility, the revised PSR determined the total offense level was 29.  Coupled with a criminal history of III, the revised PSR yielded a sentencing range of 108 to 120 months, accounting for the ten-year statutory maximum sentence. *See* USSG § 5G1.1(c)(1).

1.  USSG § 2G2.2(b)(2)—Prepubescent Minor Under 12 Years

Under the Guidelines, this two-level enhancement applies "[i]f the material involved a prepubescent minor or a minor who had not attained the age of 12 years." USSG § 2G2.2(b)(2).  The district court applied the enhancement after viewing a video identified as "Guatemalan 9-year-old Nena De La Calle," which the court determined "obviously is within the category of prepubescent and/or under . . . 12 years old."  R., Vol. 4 at 41.  The government proffered other evidence as well,

---

[4] The district court relied on the 2016 version of the Sentencing Guidelines for the applicable enhancements.  Although the revised PSR also referenced the 2013 version, it determined the offense level calculation using the 2016 version, which yielded the same calculations, except for an additional four-level enhancement that it did not apply.

including Steven's testimony that there were images involving babies and toddlers. Against this evidence, Traufield offers only his bare assertion that the video viewed by the district court was corrupt and the other material did not depict prepubescent children or minors under the age of twelve. Under these circumstances, the factual basis for applying this enhancement was satisfied.

### 2. USSG § 2G2.2(b)(3)(B)—Exchange for Valuable Consideration

This five-level enhancement applies "[i]f the defendant distributed [child pornography] in exchange for any valuable consideration, but not for pecuniary gain." *Id.* § 2G2.2(b)(3)(B). According to the Application note, the phrase,

> "[t]he defendant distributed in exchange for any valuable consideration" means the defendant agreed to an exchange with another person under which the defendant knowingly distributed to that other person for the specific purpose of obtaining something of valuable consideration from that other person, such as other child pornographic material, preferential access to child pornographic material, or access to a child.

*Id.* cmt. n.1.

Traufield contends that using a file-sharing program like GigaTribe, by itself, is insufficient to establish that he distributed child pornography with the purpose of exchanging it for a "thing of value," in this case more child pornography, *see Geiner*, 498 F.3d at 1108 (recognizing that child pornography constitutes a "thing of value" under the Guidelines); *id.* at 1110-12 (holding that use of file-sharing program, without expectation of receiving a thing of value in return, is insufficient to apply the enhancement). He says the district court should have instead enhanced his sentence

only two levels under § 2G2.2(b)(3)(F), which applies if the material was not distributed to a minor or with the expectation of receiving something of value.

"In advocating for imposition of [USSG] § 2G2.2(b)(3)(F)'s two-level enhancement, [Traufield] appropriately concedes his use of a peer-to-peer sharing network constituted 'distribution' of child pornography." *United States v. Barela*, 797 F.3d 1186, 1189 (10th Cir. 2015). In *Barela*, we vacated the defendant's sentence, recognizing that the "act of sharing child pornography on a peer-to-peer network is insufficient to support the [§ 2G2.2(b)(3)(B)] enhancement." *Id.* at 1191 & n.2 (citing *Geiner*, 498 F.3d at 1110-12). Traufield likens his case to *Barela*, but the evidence here is quite different and establishes that he did more than use GigaTribe solely to distribute child pornography; it establishes that he did so with the express purpose of receiving more child pornography. He stipulated in his plea agreement that his GigaTribe chat logs indicated he was "repeatedly telling others he was starting his collection [of child pornography] over again and asking them to let him have images and videos to help build his collection." R., Vol. 1 at 57-58. He also stipulated that he wrote, "I will be making good stuff available, won[']t be a mooch for long[.]" *Id.* at 58 n.4 (internal quotation marks omitted). The chat logs described by Stevens also confirm that Traufield expressly asked, "Want to trade?" *Id.*, Vol. 4 at 85. Indeed, he exchanged passwords with another GigaTribe user, they accessed each other's files, they confirmed their access with their written responses, and Traufield asked the other user to look out for a specific video depicting Colombian girls. The evidence supports application of the five-level enhancement.

9

### 3. USSG § 2G2.2(b)(7)(D)—More than 600 Images

Traufield claims this five-level enhancement should not apply because, as stipulated in his plea agreement, he possessed only two videos, which are assessed a total value of 150 images. *See id.* § 2G2.2 cmt. n.6(B)(ii) ("Each video . . . shall be considered to have 75 images."). Citing non-binding decisions from other circuits, he contends that files recovered from unallocated space should not be counted against him. This argument is frivolous, however, because the district court did not rely on any images recovered from unallocated space in finding that Traufield possessed more than 600 images.

Traufield also asserts the court erred in relying on shadow copies under *United States v. Dobbs*, 629 F.3d 1199, 1201-02 (10th Cir. 2011), where files containing child pornography were automatically downloaded by the defendant's web browser to his computer cache but "there was no evidence [the defendant] had accessed his computer's cache, or that he even knew it existed." Given the absence of evidence that the defendant received the images knowingly, a majority of the panel reversed his conviction for knowingly receiving child pornography. *Id.* at 1204. Here, however, the evidence does not indicate the files were automatically downloaded to Traufield's computer. Rather, the evidence establishes that Traufield affirmatively reached out to other users of GigaTribe seeking child pornography. Stevens testified that he recovered some 100 pages of chat logs where Traufield asked other GigaTribe users to exchange and did exchange files containing child pornography. Stevens also testified that using VSS, he was able to access 715 images and at least 18 videos

10

depicting child pornography that existed on Traufield's computer on July 29, 2013. Further, he told the court that the material had been deleted between July 29 and July 31, and subsequently emptied from the computer's recycle bin. And he emphasized that this material was not restored from unallocated space but was easily accessible through Windows Explorer. Unlike *Dobbs*, a reasonable jury could infer from this evidence that Traufield knowingly possessed the child pornography Stevens accessed on his computer. To the extent Traufield argues that *Dobbs* precludes the district court's consideration of shadow copies, the case is inapposite.

### 4. USSG § 2G2.2(b)(6)—Use of a Computer

This two-level enhancement applies "[i]f the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of [child pornographic] material, or for accessing with intent to view the material." *Id.* § 2G2.2(b)(6). In his sentencing memorandum, Traufield agreed this enhancement applies, but he urged the court not to consider it or to "greatly discount" it because he asserted it applies in virtually every child-pornography case. R., Vol. 1 at 154. On appeal, counsel contends we should review only for plain error because Traufield waived this issue by failing to advance it at sentencing. *See, e.g., United States v. Wireman*, 849 F.3d 956, 960-62 (10th Cir. 2017) (reviewing for plain error because although defendant raised issue in his sentencing memorandum, he failed to object at sentencing). Even if Traufield preserved the issue, however, it is meritless because we have previously rejected this argument. *See United States v. Miller*, 318 F. App'x 701, 702-03 (10th Cir. 2009) (unpublished) (concluding that

11

there was no improper double counting of criminal conduct because the defendant "could have been sentenced under § 2G2.2(a)(2) without having used a computer" and therefore "enhancing punishment for that specific and additional conduct is not prohibited").[5]

B. *Substantive Reasonableness*

Traufield also challenges the substantive reasonableness of his sentence. "In evaluating the substantive reasonableness of a sentence, we ask whether the length of the sentence is reasonable considering the statutory factors delineated in 18 U.S.C. § 3553(a)." *United States v. Hamilton*, 510 F.3d 1209, 1217-18 (10th Cir. 2007). Here, consistent with its obligations under § 3553(a), the district court accounted for the nature and characteristics of the offense, noting this case was not at the high end of the spectrum of sex offenses, but it was still a "very serious offense." R., Vol. 4 at 212. The court also considered Traufield's history and characteristics, recognizing he came from a "very nice family," had "done public-service-type" activities, and was intelligent and articulate. *Id.* at 213-14. But the court recognized he had a criminal history, including two prior felonies, multiple convictions for assault and driving under the influence, and numerous prior incarcerations.[6] Also, the court

---

[5] We may consider non-precedential, unpublished decisions for their persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1(A).

[6] Traufield makes a passing argument that the court erred in referencing a prior felony conviction for check fraud. Because he failed to object, we review only for plain error. We perceive none. Although the revised PSR confirms his guilty plea to check fraud was dismissed after a successful completion of a deferred judgment, *see*

12

referenced the need for deterrence, the need to protect the public safety, and the need to avoid unwarranted sentencing disparities. The court then considered the applicable sentencing range, the types of sentences available, and the statutory maximum, and determined that a sentence of 108 months, at the low-end of the Guidelines range, was sufficient, but not greater than necessary, to achieve the sentencing objectives. We conclude the district court satisfied its statutory obligations and imposed a substantively reasonable sentence.

## C. Conditions of Supervised Release

Finally, Traufield requests that we vacate several conditions of supervised release requiring that 1) he incur no new credit charges without probation's approval, unless he is compliant with the periodic payments assessed by the court, 2) he participate in cognitive behavioral treatment (CBT) and 3) substance abuse treatment, 4) he submit to polygraph and 5) visual response testing, 6) his computer use be restricted and 7) monitored, 8) he have no contact with minors, 9) he inform probation of all significant relationships, and 10) he register as a sex offender. He says these conditions are overbroad, unconstitutional, unrelated to his offense, unnecessarily harsh, and/or a greater deprivation to his liberty than necessary.

Traufield's failure to object at sentencing to any of these conditions means we review only for plain error. *See Barela*, 797 F.3d at 1192 ("[R]eversal is warranted under plain error test when error is clear and obvious under current law; affects

R., Vol. 3 at 103, the district court referenced this offense only in commenting on Traufield's characteristics and "dishonest behavior," *id.*, Vol. 4 at 214.

13

substantial rights; and seriously affects the fairness, integrity or public reputation of judicial proceedings."). "The district court is required to give reasons on the record for the imposition of special conditions of supervised release," although "[t]he court need only provide a generalized statement of its reasoning." *United States v. Hahn*, 551 F.3d 977, 982 (10th Cir. 2008) (internal quotation marks omitted). We will vacate a special condition under plain error review only if the record reveals no basis for the condition. *Barela*, 797 F.3d at 1192. However, "[i]f the record reveals a basis, there is no reasonable probability that but for the error the defendant's sentence would be different and thus the proceeding's fairness is not impacted." *Id.*

In imposing the special conditions of supervised release, the district court stated: "I've reviewed [the conditions of supervised release as recommended by probation], and they seem entirely appropriate, and I accept and adopt them." R., Vol. 4 at 216. Although this was a brief statement, we need not decide whether it was adequate, because even if it was not, Traufield fails to address any of the other plain error prongs, and it is neither clear nor obvious that the court erred in imposing any of the foregoing special conditions. Indeed, our independent examination of the record indicates there is ample justification for the special conditions imposed. *See Barela*, 797 F.3d at 1193 (finding no plain error where record supported imposition of special conditions). Of course, the nature of the offense and the means by which Traufield committed it justify the CBT, polygraph, and visual response testing, as well as the restrictions on his computer use and monitoring. They also justify the restriction on his contact with minors, the requirement that he apprise probation of

14

his significant relationships, and his sex-offender registration. Further, Traufield's history of substance abuse, which the district court observed includes four alcohol-related driving offenses, warrants the special condition that he obtain treatment for his problem. And the district court's imposition of $12,000 in restitution justifies the special condition requiring probation's approval for new credit accounts unless he was making his periodic payments, particularly because the revised PSR shows that he owes more than $21,000 in past child support payments.

III

Neither the brief submitted by Traufield's attorney, nor Traufield's pro se response, suggests any non-frivolous basis for this appeal. Likewise, our independent examination of the record and the relevant legal authorities discloses no basis for reversing. Accordingly, we grant counsel's motion to withdraw and dismiss this appeal.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge