**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

### No. 19-4732

UNITED STATES OF AMERICA,

　　　　　　　Plaintiff - Appellee,

　　　v.

JUSTIN MICHAEL WILSON,

　　　　　　　Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Huntington.  Robert C. Chambers, District Judge.  (3:18-cr-00146-1)

Argued:  October 30, 2020　　　　　　　　　　Decided:  December 29, 2020

Before NIEMEYER and KEENAN, Circuit Judges, and Richard E. MYERS II, United States District Judge for the Eastern District of North Carolina, sitting by designation.

Affirmed by unpublished opinion.  Judge Keenan wrote the opinion, in which Judge Niemeyer and Judge Myers joined.

**ARGUED:**  Jonathan D. Byrne, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant.  Joseph Franklin Adams, OFFICE OF THE UNITED STATES ATTORNEY, Huntington, West Virginia, for Appellee.  **ON BRIEF:** Wesley P. Page, Federal Public Defender, Rhett H. Johnson, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant.  Michael B. Stuart, United States Attorney, OFFICE OF THE

UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

––––––––––––

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

After a bench trial, Justin Michael Wilson was convicted of carjacking, in violation of 18 U.S.C. § 2119, and of brandishing a firearm, specifically, a machinegun, in connection with a crime of violence (the brandishing count), in violation of 18 U.S.C. §§ 924(c)(1)(A) and (c)(1)(B)(ii).[1] The carjacking offense served as the predicate crime of violence required to prove the brandishing count. After convicting Wilson of both offenses, the district court sentenced Wilson to a total term of imprisonment of 30 years and one day.

On appeal, Wilson raises two claims. First, Wilson argues that there was insufficient evidence to support both convictions because he lacked the required intent to cause harm to the carjacking victims. Second, Wilson argues that the district court abused its discretion in denying his motion for a new trial, which was based on Wilson's assertion that the prosecution improperly withheld oral statements of key witnesses in violation of *Giglio v. United States*, 405 U.S. 150 (1972).

Upon our review, we conclude that: (1) the government's evidence was sufficient on both counts to prove Wilson's intent to harm the victims; and (2) Wilson failed to establish a *Giglio* violation. Accordingly, we affirm the district court's judgment.

---

[1] Wilson was also indicted on three additional counts: (1) possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5861(d) and 5871 (Count Three); (2) possession of a stolen firearm, in violation of 18 U.S.C. §§ 922(j) and 924(a)(2) (Count Four); and (3) possession of a machinegun, in violation of 18 U.S.C. §§ 922(o) and 924(a)(2) (Count Five). Prior to the bench trial, Wilson pled guilty to Counts Three and Five, and the government dismissed Count Four. These three counts are not at issue on appeal.

We state the evidence in the light most favorable to the prosecution, the prevailing party in the trial court. *United States v. Fall*, 955 F.3d 363, 375 (4th Cir. 2020). The two offenses at issue arose from a sequence of events that took place on January 11, 2018. That morning in Jackson County, West Virginia, Wilson stole a white Ford Expedition, a sport utility vehicle (the SUV, or the white SUV) that he purportedly was "test driving" as a prospective purchaser. Wilson drove the SUV to Mason County, West Virginia, where he received a machinegun in a pre-arranged transaction. When Wilson took possession of the machinegun, it was not loaded with ammunition, and there was no evidence suggesting that he loaded the weapon at any point that day. Shortly thereafter, the police responded to a report of a man in a white SUV brandishing a gun at a couple who had stopped their car on the shoulder of a road. A Kanawha County officer eventually spotted Wilson's white SUV and pursued it until the officer lost sight of the vehicle.

Later that day, Wilson approached Justin Clark, an employee working at an Advanced Auto Parts store in Putnam County, West Virginia. Wilson asked Clark to trade the vehicle on which he was working in exchange for the white SUV. After Clark refused, Wilson demanded that Clark provide him with the keys to the vehicle, stating that he was "on the run from the law." Wilson also stated that he had "a fully automatic weapon" but did not "want to have to do anything."

Despite this threat, Wilson did not display the machinegun to Clark. After Clark told Wilson that the car keys were in the store, Clark went inside, locked the door, and

placed a telephone call to the police. When Clark did not return, Wilson left the parking lot without further incident.

Wilson's spree continued when he drove the white SUV to a nearby shopping plaza, where John Thaxton and Mathew Francisco, two Putnam Public Service District employees, were eating their lunch in their employer's vehicle (the company vehicle). Pointing the machinegun at both men, Wilson approached the company vehicle and told the men that this was their "lucky day." Wilson provided Thaxton and Francisco with "two options, to either help him unload the vehicle he was in or [they] could die." Thaxton and Francisco complied with Wilson's demand, helping Wilson transfer his belongings from the SUV to the company vehicle. During the transfer of the items, Wilson placed the machinegun on the front seat of the SUV.

When Wilson demanded the keys to the company vehicle, Thaxton and Francisco informed Wilson that the keys were inside the vehicle. At first, Wilson misunderstood the response and became highly agitated, assuming a threatening posture and threatening to take the keys by force if necessary. Ultimately, Wilson took possession of the company vehicle.

As Wilson began driving away, West Virginia State Trooper J.E. Garren arrived at the shopping plaza. Garren, along with four other officers, pursued Wilson. The pursuit eventually ended when Wilson crashed the company vehicle on the side of a road. During the chase, Wilson had displayed the machinegun outside the driver's side window in the direction of the pursuing officers. The officers arrested Wilson at the scene of the accident.

5

In Garren's police report, he stated that Wilson was taken into custody after being removed from the vehicle "without further incident." At trial, however, Garren testified that Wilson attempted to fight and to resist the officers as they placed handcuffs on him. Wilson's counsel attempted to impeach this trial testimony based on Garren's prior inconsistent statement in his police report.

Before trial, the government had conducted witness preparation sessions with Thaxton, Francisco, and Garren. No notes were taken during these sessions and the witnesses' oral statements were not memorialized or recorded in any manner. During these sessions, relevant to Wilson's *Giglio* claim, Garren related that Wilson had resisted being handcuffed upon arrest, and Thaxton and Francisco described Wilson's confrontational demeanor during a misunderstanding about the company vehicle keys.

After completion of the bench trial and sentencing hearing, Wilson moved for a new trial. He argued that his due process rights had been violated by the government's failure to disclose the oral statements made by Thaxton, Francisco, and Garren in the pretrial preparation session. Wilson further argued that his Sixth Amendment rights were violated because he would have requested a jury trial if he had known about the allegedly conflicting statements. The district court denied the motion, concluding that Wilson failed to demonstrate prejudice affecting his substantial rights. Wilson appeals.

II.

We review Wilson's convictions under a mixed standard of review, with the trial court's factual findings reviewed for clear error and its legal conclusions evaluated de

6

novo.  *United States v. Landersman*, 886 F.3d 393, 406 (4th Cir. 2018).  We resolve

challenges to the sufficiency of the evidence by determining whether substantial evidence

supports the convictions, viewing the evidence in the light most favorable to the

prosecution.  *Fall*, 955 F.3d at 375.  A conviction is supported by substantial evidence

when "any rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt."  *Id.*

A.

The offense of carjacking required the government to prove that the defendant "(1)

with intent to cause death or serious bodily harm (2) took a motor vehicle (3) that had been

transported, shipped or received in interstate or foreign commerce (4) from the person or

presence of another (5) by force and violence or intimidation."  *United States v. Small*, 944

F.3d 490, 498 (4th Cir. 2019) (citation omitted); *see* 18 U.S.C. §  2119.  In the present case,

Wilson only disputes the sufficiency of the evidence regarding the first element, namely,

whether he acted with intent to cause death or serious bodily harm when he took possession

of the company vehicle.

Wilson argues that his conduct on January 11, 2018, failed to establish that he had

an intent to harm or kill Thaxton or Francisco when he took the company vehicle from their

possession.  Relying on an out-of-circuit decision, *United States v. Fekete*, 535 F.3d 471

(6th Cir. 2008), Wilson asserts that his conduct of displaying an unloaded weapon, without

more, was insufficient to establish that he had the intent to harm or kill the carjacking

victims.  We disagree with Wilson's argument.

7

Under our precedent, the *mens rea* requirement for carjacking requires the government to show that "at the moment the defendant demanded or took control over the driver's automobile[,] the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car." *Small*, 944 F.3d at 498 (quoting *Holloway v. United States*, 526 U.S. 1, 12 (1999)) (emphasis omitted). The Supreme Court has clarified that empty threats of violence are insufficient to prove this element of carjacking. *Holloway*, 526 U.S. at 11. Thus, if the evidence shows that a defendant was unwilling to follow through on an empty threat, then the defendant would have lacked the required intent to commit the carjacking. *Small*, 944 F.3d at 498.

Although it is difficult to delineate precisely between an empty threat and conduct sufficient to establish the required intent, we have held that the use of a weapon, affirmative threatening statements, and physical violence against a victim all constitute probative evidence of an intent to harm or kill a victim if necessary to steal a vehicle. *United States v. Bailey*, 819 F.3d 92, 97-98 (4th Cir. 2016) (concluding that the lack of a weapon transformed the defendant's threat to the car's driver into a mere bluff). We have rejected a per se rule that a defendant's use of an unloaded firearm will fail to support a carjacking conviction. *Small*, 944 F.3d at 500 ("Nor does the lack of proof that the gun was loaded decide this case. . . . The carjacking statute does not require the use of a loaded gun."). As we explained in *Small*, an unloaded firearm is still capable of causing harm through use of blunt force. *Id.* Therefore, in reviewing evidence of a defendant's intent, we must consider "the entirety of the circumstances" in deciding whether a defendant had the intent to harm

8

or kill the carjacking victims if necessary to steal the vehicle. *Id.* at 499 (citing *Fekete*, 535 F.3d at 481).

Here, the evidence showed that Wilson engaged in conduct exceeding the mere display of an unloaded firearm. Francisco testified that Wilson gave him and Thaxton "two options, to either help him unload the vehicle he was in or we could die." Wilson made these threats while pointing the machinegun at both Thaxton and Francisco. *See Bailey*, 819 F.3d at 97 (explaining that the use of weapons and affirmative threatening statements are all factors that can establish intent to harm for the crime of carjacking). Thus, Wilson verbally threatened the victims while demonstrating his ability to follow through on his threat by pointing the machinegun at them.

Wilson's conduct also demonstrated a clear escalation of the threat of violence as the day progressed. Conduct that began with stealing a car and frightening individuals on the side of a road, intensified to general threats to Clark about using a gun, and culminated in explicit threats of violence to Thaxton and Francisco. At each stage, Wilson's actions exhibited a greater propensity toward violence. This escalation in conduct showed an increasingly desperate person resorting to explicit threats of violence, which supported the district court's conclusion that Wilson was willing to act by whatever means required to accomplish his goal of taking the company vehicle.

The fact that the machinegun was not loaded is not dispositive of Wilson's intent. Wilson's threats were not restricted to threatening to shoot the carjacking victims. *See Small*, 944 F.3d at 500 (explaining that an unloaded firearm can still serve as a weapon and harm a victim). Instead, Wilson more generally threatened to kill or harm the victims if

9

they failed to help him. Moreover, both Thaxton and Francisco testified that they considered the threats credible when made and feared what action Wilson might take.

Our deferential standard of review therefore supports the district court's conclusions regarding Wilson's intent. *See Fall*, 955 F.3d at 375 (stating a conviction is upheld if a rational trier of fact could have found an element met beyond a reasonable doubt when the evidence is viewed in the light most favorable to the prosecution). Although some evidence supports Wilson's argument, such as his conduct of putting down the weapon and helping Thaxton and Francisco move items from the SUV to the company vehicle, that evidence does not undermine the fact finder's decision to credit the other evidence recited above.

Taking into account the full set of circumstances, *see Small*, 944 F.3d at 499, the record plainly supports a conclusion that Wilson had the intent to harm or kill his victims if necessary to take the company vehicle, thereby establishing the element of Wilson's intent. *See United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982) ("The relevant question is not whether the appellate court is convinced of [the defendant's] guilt beyond a reasonable doubt, but rather whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.") (emphasis omitted). We therefore hold that there was sufficient evidence for a trier of fact to have found beyond a reasonable doubt that Wilson had the required criminal intent. And, in view of Wilson's failure to contest the sufficiency of the evidence of the remaining elements of the carjacking count, we hold that the district court did not err in its determination that Wilson was guilty of the carjacking offense.

10

B.

We next consider the sufficiency of the evidence regarding Wilson's conviction on the brandishing count. Under Section 924(c), a defendant who brandishes a machinegun during the commission of a predicate crime of violence, in this case, carjacking, is subject to a sentence of not less than 30 years, to be imposed consecutively to the sentence for the predicate offense. 18 U.S.C. § 924(c)(1)(A), (B)(ii). The government must establish two elements under this subsection to prove the crime of brandishing a firearm, specifically, a machinegun: (1) that the defendant brandished a machinegun; and (2) that the act of brandishing occurred during or in relation to a crime of violence. *See United States v. Strayhorn*, 743 F.3d 917, 922 (4th Cir. 2014). A defendant brandishes a weapon when he "display[s] all or part of the firearm, or otherwise make[s] the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person." 18 U.S.C. § 924(c)(4).

Here, Wilson does not contest that he displayed the machinegun by pointing it at Thaxton and Francisco. Instead, he only challenges the sufficiency of the evidence regarding the second element, whether the government proved that he brandished the weapon during commission of a crime of violence, namely, carjacking. *See United States v. Evans*, 848 F.3d 242, 244 (4th Cir. 2017) (holding that carjacking qualifies as a crime of violence under Section 924(c)). As we explained above, the evidence was sufficient to support the district court's determination that Wilson was guilty of the carjacking offense. Thus, the government established beyond a reasonable doubt that Wilson committed a crime of violence for purposes of proving the brandishing offense. Accordingly, we hold

11

that the evidence was sufficient to support Wilson's conviction on the brandishing count. *See Fall*, 955 F.3d at 375.

## III.

We next consider Wilson's argument that the district court abused its discretion in denying Wilson's motion for a new trial alleging *Giglio* violations. *See United States v. Whyte*, 918 F.3d 339, 352 (4th Cir. 2019) (establishing the standard of review). We review the district court's factual findings for clear error, and the court's legal determinations de novo. *Id.*

Wilson concedes that the government provided him with Garren's initial police report, the recorded statements that Thaxton and Francisco made to the police on the day of the carjacking, as well as all testimony that the government presented to the grand jury. Thus, the only evidence Wilson alleges that he was entitled to receive, but did not, was a summary of the oral statements made by Francisco, Thaxton, and Garren during their pre-trial preparation sessions with the government. These statements mirrored the trial testimony of the three witnesses. Relevant here, Garren testified that Wilson attempted to resist arrest, although Garren had indicated in his police report that he was able to arrest Wilson "without further incident." And both Thaxton and Francisco, purportedly in variance with their earlier statement on the day of the carjacking, testified at trial that Wilson had become agitated and confrontational during their encounter.

12

Wilson claims that the government had a constitutional obligation under *Giglio v. United States*, 405 U.S. 150 (1972), to disclose the statements from the pretrial preparation sessions as impeachment evidence. We find no merit in Wilson's argument.

The government violates a defendant's due process rights when it suppresses favorable evidence material to either his guilt or his punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Accordingly, the government has an obligation to provide the defense with impeachment evidence meeting this definition. *United States v. Bagley*, 473 U.S. 667, 676 (1985) (citing *Giglio*, 405 U.S. at 154).

To establish a *Giglio* violation, a defendant must demonstrate that: (1) the impeachment evidence was favorable to the defendant; (2) the evidence is material, meaning the defendant suffered prejudice resulting from the violation; and (3) the evidence actually was suppressed. *United States v. Young*, 916 F.3d 368, 383 (4th Cir. 2019). A finding of materiality requires a reasonable probability that the evidence would have produced a different result. *United States v. Parker*, 790 F.3d 550, 558 (4th Cir. 2015).

Before trial, the government provided Wilson a copy of Garren's police report, as well as the initial statements made by Thaxton and Francisco to the police. After hearing the trial testimony of these three witnesses, Wilson had the ability to impeach that testimony to the extent that it differed from the original accounts. And Wilson did attempt to impeach the witnesses at trial by using their prior statements regarding Wilson's demeanor.

Moreover, the witnesses' statements concerning Wilson's demeanor made during the pretrial preparation sessions were not material to either Wilson's guilt or punishment,

13

as the outcome would not have changed. Because Wilson has not shown a reasonable probability of a different outcome if he had been provided those statements, he has failed in his burden to show a *Giglio* violation.[2] *See Young*, 916 F.3d at 383 (requiring a defendant to have suffered prejudice to establish a *Giglio* claim). Accordingly, we hold that the district court did not abuse its discretion in denying his motion for a new trial.

IV.

For these reasons, we affirm the district court's judgment.

*AFFIRMED*

---

[2] Wilson also suggests that he would not have waived his right to a jury trial if he had received the witnesses' oral statements from the pretrial preparation session. It is unclear whether Wilson raises this as an argument to support his claim of a *Giglio* violation, or as a stand-alone claim. In any event, the argument lacks merit. A waiver is knowing and intelligent if the defendant "fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it." *United States v. Ruiz*, 536 U.S. 622, 629 (2002). Wilson does not argue that he did not understand the general consequences of his waiver, and he admits that his waiver was knowing and intelligent at the time it was made.