**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-4219

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

MALIK EARL WILDER,

Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Florence. Robert Bryan Harwell, Senior District Judge.  (4:22-cr-00433-RBH-1)

Argued:  December 13, 2024                     Decided:  December 30, 2024

Before WILKINSON, KING, and HEYTENS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Edmund Gregorie Monroe Neyle, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Florence, South Carolina, for Appellant. Benjamin Neale Garner, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee. **ON BRIEF:** Adair F. Boroughs, United States Attorney, Leesa Washington, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenville, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Malik Earl Wilder pursues this appeal from the District of South Carolina, challenging the district court's denial of his motion to suppress evidence allegedly seized in violation of his Fourth Amendment rights. Wilder entered a guilty plea in November 2023 to a single felony charge of possession of a firearm and ammunition by a convicted felon. His guilty plea was conditioned on the United States Attorney's agreement — made under Rule 11(a)(2) of the Federal Rules of Criminal Procedure — that Wilder could pursue this appeal. As explained below, we are satisfied that the court did not err in denying Wilder's motion to suppress. We therefore affirm his conviction and sentence.

I.

A.

These proceedings arise from Wilder's arrest on March 9, 2022, at the Marco Polo Pizzeria in Myrtle Beach, South Carolina. On that occasion, officers of the Myrtle Beach Police Department (the "MBPD") —including Officer Mohammad Channani — detained and arrested Wilder and his female companion, Ireyhanna Sinkler. Five days earlier, on March 4, 2022, the MBPD had issued a "Be On the Lookout" alert (called a "BOLO") for both Wilder and Sinkler. The BOLO explained, inter alia, that Sinkler was wanted by the Lumberton North Carolina Police Department, and the BOLO asserted — in red bold and italicized font — that "*[b]oth subjects are convicted felons and should be considered*

***armed and extremely dangerous.***"  *See* J.A. 106.[1]  The MBPD officers were further advised by the BOLO that Wilder and Sinkler had been involved in an armed robbery on March 9, the very day of their arrest.

After Wilder and Ms. Sinkler were spotted in the Pizzeria, several MBPD officers entered — with guns drawn — ordering Wilder and Sinkler to get on the floor.  They each promptly complied with the directives of the police officers.  After Wilder was restrained and handcuffed, Officer Channani confirmed Wilder's identity and noticed a black, multi-pocketed so-called "cross-body bag" that was strapped to Wilder's chest.  Officer Channani then pointed to the cross-body bag and asked, "Is that drugs in there?"  In response, Wilder replied, "No."

Officer Channani also noticed a separate and smaller clear plastic bag protruding from the top of a pocket in Wilder's cross-body bag.  On the basis of his training and experience, Officer Channani suspected that the protruding plastic bag contained narcotics, because that type of bag was commonly used for such purposes.  Officer Channani then asked another police officer to hold onto Wilder and stated loudly, "I see a bag that's possibly holding narcotics in there."  Wilder promptly volunteered, "Ain't nothing but a little weed, man."

While Wilder was yet wearing the cross-body bag, Officer Channani unzipped a pocket thereof that held and concealed the rest of the smaller plastic bag, and he then saw

---

[1] Our citations herein to "J.A. ___" refer to the Joint Appendix filed herein by the parties.

that it contained the green substance referred to by Wilder as "weed" — that is, marijuana. Officer Channani then emptied the remaining contents of that pocket of the cross-body bag and proceeded to unzip other pockets of the cross-body bag. He found in another pocket a jar that contained a white substance consistent with crack cocaine. While searching the cross-body bag, Officer Channani also felt what he immediately believed to be a handgun. He then unbuckled the cross-body bag and removed it from Wilder.

Officer Channani then completed his examination of Wilder's cross-body bag, from which he seized the firearm that he had already felt, that is, a loaded Bersa Thunder .380 handgun. He promptly unloaded the Bersa .380. Wilder was then arrested on state charges relating to the handgun, plus his possession of marijuana and crack cocaine. Two months later, on May 24, 2022, Wilder was indicted by the federal grand jury on a single charge of being a felon in possession of a firearm and ammunition, in violation of, inter alia, 18 U.S.C. §§ 922(g)(1).[2]

B.

On June 23, 2023, Wilder moved to suppress the firearm and ammunition evidence that had been seized from his cross-body bag, contending that the search and resulting seizure conducted by Officer Channani was unconstitutional under the Fourth Amendment.

---

[2] Three firearm related statutes were specified in the indictment. First, § 922(g)(1) of Title 18 provides in relevant part that "[i]t shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition . . . ." *See* 18 U.S.C. § 922(g)(1). Second, § 924(a) of Title 18 provides for penalties for violations of federal firearm laws. Third, § 924(e) of Title 18 provides enhanced penalties for certain individuals convicted of firearm offenses.

4

In response, the United States Attorney contended that the search of Wilder's cross-body bag was valid because it had been seized in a search that was incident to an arrest.  And he also asserted that the contents of the cross-body bag — specifically the firearm and ammunition — would have been inevitably discovered during an inventory search.

On October 3, 2023, the district court conducted an evidentiary hearing in Florence on Wilder's suppression motion.  The prosecutors presented its evidence to the court during the hearing — including testimony from Officer Channani — and the court considered competing arguments from the lawyers.  About a week later, on October 11, 2023 — by written order — the court denied Wilder's motion to suppress.  *See United States v. Wilder*, No. 4:22-cr-00433-RBH-1 (D.S.C. Oct. 11, 2023), ECF No. 58 (the "Suppression Denial").

In making its Suppression Denial, the district court declined to rule that the events resulting in the challenged seizure was a search incident to arrest.  The court agreed, however, that the seized contents of Wilder's cross-body bag (i.e., the firearm and ammunition) would have been inevitably discovered during an inventory search following his arrest for possession of marijuana.  In the Suppression Denial the court explained that:

> [T]he initial encounter with and protective *Terry* frisk of [Wilder] were valid based on (1) the officers' belief that [Wilder] and Sinkler were involved in a nearby armed robbery and (2) the BOLO, which indicated [Wilder] and Sinkler were convicted felons who should be considered armed and extremely dangerous.

*See* Suppression Denial, ECF No. 58 at 4.  During the suppression proceedings, the prosecution did not emphasize that the search of Wilder's cross-body bag had been

5

conducted pursuant to a *Terry* stop.[3] They instead stressed that, when Wilder admitted to the officers that he had marijuana in his cross-body bag, the encounter moved from a *Terry*-type scenario to an arrest and search situation based on probable cause. Alternatively, they argued the firearm was properly seized under the inevitable discovery doctrine. In the Suppression Denial, the court agreed with the later proposition and ruled that the inevitable discovery doctrine applied to the situation presented.

As the Suppression Denial explained, our 2019 precedent in *United States v. Seay* — plus a subsequent case called *United States v. Herman* — could not be distinguished, in that Officer Channani would have inevitably arrested Wilder for possession of marijuana. And that arrest would have occurred in any event, notwithstanding the opening of the cross-body bag and the Officer's retrieval of marijuana, the firearm, and the ammunition. *See* 944 F.3d 220 (4th Cir. 2019); 828 Fed. App'x 894 (4th Cir. 2020). As the court explained:

> Officer Channani's common practice of arresting people for possession of marijuana and his credible testimony that (1) based on [Wilder]'s admission he knew the plastic bag contained weed and (2) once he knew there was marijuana [Wilder] was going to be placed under arrest.

*See* Suppression Denial, ECF No. 58 at 9. Thus, the court found "that an inventory search of [Wilder] following his arrest was inevitable and reasonable given the safety considerations raised if an arrestee is able to bring narcotics and/or firearms into police vehicles and/or the jail." *Id*. at 11.

---

[3] A *Terry* stop is a brief, investigative stop of a person by a law enforcement officer based on reasonable suspicion of criminal activity. *See Terry v. Ohio*, 392 U.S. 1 (1968).

6

C.

Two weeks later, on October 24, 2023, Wilder requested that the district court reconsider its Suppression Denial, contending in a new motion that the MBPD had no standardized criteria governing inventory searches, and arguing that the lack thereof undermined the constitutionality of the seizures. He supported his reconsideration motion with a MBPD policy directive, dated June 16, 2023, that relates to officers conducting an inventory of detainee property. Wilder argued that this policy directive constituted strong evidence that the MBPD lacked standardized criteria for inventory searches before June 2023, and thus had no such criteria when the challenged seizures were made on March 9, 2022. In response, the prosecution presented the court with an earlier policy — effective since 2004 — called MBPD Standard Operating S-118 (effective July 12, 2004) ("SOP S-118"), which had established standardized criteria for inventory searches.

By Order of November 28, 2023, the district court denied Wilder's motion to reconsider. It therein agreed with the prosecution:

> [T]hat once Officer Channani determined that Wilder was going to be arrested for possession of marijuana (based on his own admission), the discovery of the contents of his bag, including the illegal firearm, was inevitable based on written, standardized criteria set forth in SOP S-118.

*See United States v. Wilder*, No. 4:22-CR-00433-RBH, 2023 WL 8242211, *2 (D.S.C. Nov. 28, 2023). By its Order, the court thus ruled that Wilder's reconsideration argument and the June 2023 directive did not alter the Suppression Denial's ruling on the constitutionality of the challenged seizures. Wilder's motion to reconsider was therefore denied.

7

D.

On November 30, 2023, Wilder entered his guilty plea to the single offense of being a felon in possession of a firearm and ammunition, as charged in the Indictment. That guilty plea was made pursuant to his plea agreement with the United States Attorney, and it specifically preserved Wilder's right to appeal the district court's denial of his suppression motion. Wilder was then sentenced to 18 months in prison, followed by three years of supervised release. Wilder thus pursues this appeal and seeks a reversal of the Suppression Denial.

II.

When reviewing a district court's ruling on a motion to suppress, we assess the court's legal determinations de novo and its factual findings for clear error. *See United States v. Seay*, 944 F.3d 220, 223 (4th Cir. 2019) (quoting *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir. 2005)). Whether law officers would have inevitably discovered evidence by a lawful means is a "question of fact." *Id.* (quoting *United States v. Bullette*, 854 F.3d 261, 265 (4th Cir. 2017)). In that regard, we are obliged to "accord great deference" to the district court. *Id.* Importantly here, when a district court has denied a motion to suppress, "[we] construe[] the evidence in the light most favorable to the government." *See United States v. Fall*, 955 F.3d 363, 369–70 (4th Cir. 2020) (internal quotation marks omitted).

Having carefully assessed the record on appeal, including the various submissions of the parties, and with the benefit of oral argument, we are satisfied that the district court

did not err in crediting and relying upon Officer Channani's testimony. And we are also satisfied that the court did not err in finding that Wilder would have been arrested in any event, based on his possession of marijuana, and that — pursuant to SOP S-118 — Wilder's cross-body bag would have been inventoried. As a result, the firearm and ammunition underlying his conviction would have been inevitably discovered and seized. We are therefore satisfied to adopt the court's carefully crafted and well-reasoned Suppression Denial, as well as its denial of reconsideration.

## III.

Pursuant to the foregoing, we reject Wilder's contentions on appeal and affirm the Suppression Denial and the judgment.

*AFFIRMED*